**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-26931-ALTMAN**

**JORGE LUIS COLORADO ALCON**,

*Petitioner*,

*v.*

**MARKWAYNE MULLIN**, *et al.*,

*Respondents.*

_________________________________/

**ORDER**

The Petitioner, Jorge Luis Colorado Alcon, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition") [ECF No. 1], challenging his immigration detention. Alcon asks us to order the Respondents to "release [him] immediately" or, in the alternative, to order the "Respondents to provide [him] with an individualized bond hearing[.]" Petition at 17. The Respondents oppose the Petition, arguing that Alcon remains subject to mandatory detention because he "applied for admission to the United States at the Brownsville, Texas, Port of Entry" and was subsequently "paroled into the United States through April 24, 2026," but "remained in the United States beyond the authorized parole period[.]" Response [ECF No. 6] at 2. After careful review, we **DISMISS** the Petition.

**THE FACTS**

Alcon is a native and citizen of Venezuela. *See* Record of Deportable Alien [ECF No. 6-1] at 1. On November 21, 2024, he "applied for admission to the United States at the Brownsville, TX, Port of Entry." Notice to Appear [ECF No. 6-2] at 1. Alcon was admitted and released on parole, which expired on April 24, 2026. *See* Form I-94 [ECF No. 6-3] at 1 ("Admit Until Date: 2026 April 24"); Reply [ECF No. 7] at 2 ("Respondents' Form I-94 printout reflects an 'Admit Until' date of

April 24, 2026, and Petitioner accepts that date." (citing Form I-94)). On January 24, 2025, the Department of Homeland Security ("DHS") served Alcon with a Notice to Appear, which identified Alcon as "an arriving alien" and alleged that he lacked a "valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document." NTA at 1. DHS therefore charged him as inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). *Id.* at 4. The NTA directed Alcon to "appear before an immigration judge" on January 25, 2025. *Id.* at 1–2. On September 25, 2026, Alcon "was stopped for a routine traffic matter[.]" Petition at 2. After the officer found that Alcon lacked legal status, he notified Immigration and Customs Enforcement ("ICE") about an "alien incarcerated at the Saint Lucie County Jail." Record of Deportable Alien at 2.

Alcon filed this Petition while he was detained at the Krome North Service Processing Center. *See* Petition at 1. In it, he challenges his classification under § 1225(b)(2) and asserts a due-process claim, insisting that he poses neither a flight risk nor a danger to the community. As redress, he asks us to order his immediate release, with or without bond. *See id.* at 17.

## THE LAW

The federal habeas corpus statute, 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Cadet v. Bulger*, 377 F.3d 1173, 1181–82 (11th Cir. 2004) (quoting 28 U.S.C. § 2241(c)(3)). This provision allows persons to challenge the legality of their "immigration-related detention[.]" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Guo Xing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("[S]o long as an alien does not challenge a final order of removal, district courts retain jurisdiction under § 2241 to review habeas petitions, including challenges to an alien's detention.").

## Analysis

The Petition advances two claims.[1] *First*, Alcon contends that he has been wrongly classified as a § 1225(b)(2) detainee and that he's entitled to the bond procedures available under § 1226(a). *See* Petition at 10–12. *Second*, he argues that his continued detention violates his due-process rights because he poses neither a flight risk nor a danger to the community. *See id.* at 12–14. We address each claim in turn.

### I. Alcon's Detention Under § 1225(b)(2)

Alcon claims that he isn't an "arriving alien" because he was "arrested in the interior nearly two years" after DHS "parole[d] him into the United States." Petition at 11. He therefore believes that "§ 1226(a) governs [his] detention, [and] he is entitled to an individualized custody determination and a bond hearing." *Id.* at 12. The Respondents answer that Alcon "arrived on or about November 21, 2024, at the Brownsville, Texas Port of Entry seeking admission without valid entry documents," and that he therefore remains "an arriving alien" subject to mandatory detention, even if he "was paroled into the United States." Resp. at 4; *see also* 8 C.F.R. § 1.2 ("An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.").

Section 1225(b)(2)(A) provides that, if an admissions officer determines that an alien "seeking admission" is not "clearly and beyond a doubt entitled to be admitted" into the United States, the alien "shall be detained for a proceeding under section 1229a." In *Hernandez Alvarez v. Warden, Fed.*

[1] Alcon also asserted a third challenge to the termination of his parole under the Administrative Procedure Act ("APA"). *See id.* at 14–16. This third challenge was premised on Alcon's assertion that his "parole was authorized through November 20, 2026, and therefore had not expired automatically under 8 C.F.R. § 212.5(e)(1) when he was arrested on September 25, 2026." Petition at 15. In Reply [ECF No. 7], however, he says that the "Respondents' Form I-94 printout reflects an 'Admit Until' date of April 24, 2026, and [he] accepts that date. [Alcon] therefore withdraws the statement in Paragraph 61 that his parole had not expired when he was arrested, and he does not rely on Count Three's premise that his parole remained in effect. The correction does not affect Counts One or Two." Reply at 2 (citing Form I-94). We therefore needn't address this third claim.

*Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026), the Eleventh Circuit explained that § 1225(b)(2)(A) imposes three requirements:

> [A]n alien shall be detained for a § 1229a proceeding if he (1) is arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer.

175 F.4th at 1269 (cleaned up). As the court observed, the word "seeking" describes an "active and temporally ongoing step or process." *Id.* at 1268. The petitioners in that case, the court said, weren't "applying for entry in any literal sense *when they were detained*" following traffic stops. *Id.* at 1269 (emphasis added). Nor (the court continued) could the government establish that they were "seeking" admission merely because they contested their removal proceedings; after all, "seeking relief from removal is not the same thing as seeking admission[.]" *Id.* at 1285.

But *Hernandez Alvarez* didn't address our facts—which involve a petitioner who was paroled into the country. *See Sylvaince v. Warden, Miami Fed. Det. Ctr.*, 2026 WL 2568522, at *2 (S.D. Fla. Aug. 31, 2026) (Ruiz, J.) (observing that *Hernandez Alvarez* "did not specifically address" a petitioner's "circumstances as an individual initially paroled into the country"). Congress allows parole of "any alien applying for admission," but it expressly provides that parole "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). When parole ends, the alien "shall forthwith return or be returned to the custody from which he was paroled," after which "his case shall continue to be dealt with in the same manner as that of any other applicant for admission." *Ibid.* The regulations likewise provide that the parole's expiration restores the alien to "the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(1)(ii), (e)(2)(i). Indeed, "[a]n arriving alien remains an arriving alien" even after parole "is terminated or revoked." 8 C.F.R. § 1.2 (defining an "Arriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international

or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport," and noting that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked").

This conclusion comports with the Eleventh Circuit's longstanding understanding that a paroled alien "remains constructively at the border, seeking admission and subject to exclusion proceedings." *Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1338 (11th Cir. 2003). And the Supreme Court has said that arriving aliens, "even those paroled elsewhere in the country for years pending removal," are treated for due-process purposes "as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (cleaned up).

Which brings us to the question presented here: Does an alien who sought admission at a port of entry remain subject to the provisions of § 1225(b)(2) when he's re-detained inside the country *after* being temporarily paroled? We think he does because, unlike the petitioners in *Hernandez Alvarez*, Alcon satisfies all three of the Eleventh Circuit's requirements for an alien to be considered "an arriving alien" subject to mandatory detention under § 1225(b)(2). *See Hernandez Alvarez*, 175 F.4th at 1269 (holding that "an alien shall be detained for a § 1229a proceeding if he (1) is arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer" (cleaned up)). *First*, Alcon was "arriving in the United States" without having been granted lawful entry. *Ibid.* He presented himself at the Brownsville Port of Entry and was identified as "an arriving alien." NTA at 1. Although he was later "paroled into the United States," Petition at 1, the law is clear that parole "shall not be regarded as an admission," 8 U.S.C. § 1182(d)(5)(A). And, because an arriving alien

"remains an arriving alien" even after parole expires, 8 C.F.R. § 1.2, his physical presence in the interior of the country doesn't alter his classification.

*Second*, Alcon was affirmatively "seeking lawful entry after inspection and authorization by an immigration officer[.]" *Hernandez Alvarez*, 175 F.4th at 1269. He "applied for admission" at the Brownsville Port of Entry, where an immigration officer inspected him, and DHS later served him with an NTA ordering him to appear before an immigration judge. *See* NTA at 1. His resulting removal proceedings thus arose from an actual application for admission, rather than from the mere act of "contesting one's removal." *Hernandez Alvalrez*, 175 F.4th at 1284. And when ICE later re-detained him, those proceedings remained ongoing. *See* Record of Deportable Alien at 3 ("Alcon will be held in ICE custody pending removal."). Unlike the petitioners in *Hernandez Alvarez*, then, who were "only present in the country," 175 F.4th at 1269, Alcon had affirmatively sought admission and remained "constructively at the border, seeking admission," *Assa'ad*, 332 F.3d at 1338.

*Third*, Alcon wasn't "clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer." *Hernandez Alvarez*, 175 F.4th at 1269. Indeed, when he presented himself at the port of entry, immigration officials determined that he *lacked* the required "valid entry document" and charged him as inadmissible under § 212(a)(7)(A)(i)(I). NTA at 1, 4.

That Alcon was paroled doesn't change any of these facts. Parole, as we've said, "shall not be regarded as an admission," and Congress has directed that an alien return to "the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Moreover, § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings," not merely until those proceedings commence. *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). Alcon's re-detention therefore occurred during the same admission process that began when he presented himself at the Brownsville Port of Entry. This distinction gives effect to *Hernandez Alvarez*'s requirement that the alien must be "seeking" admission

when he's detained—without treating participation in removal proceedings as an independent application for admission. *Hernandez Alvarez*, 175 F.4th at 1269, 1284.

We recognize that district courts are split on this issue. In *Sylvaince v. Warden, Miami Fed. Det. Ctr.*, for instance, a judge on our Court held that an alien "re-detained in the interior after living in the United States for years" *was* subject to the strictures of § 1226(a). 2026 WL 2568522, at *3 (S.D. Fla. Aug. 31, 2026) (Ruiz, J.) (cleaned up); *see also Velasquez-Lopez v. Warden, Krome N. Serv. Processing Ctr.*, 2026 WL 2349503, at *2 (S.D. Fla. Aug. 13, 2026) (Bloom, J.) (same). Still, other judges have concluded, as we do here, that previously paroled arriving aliens remain subject to mandatory detention. *See, e.g.*, *Cabrera v. Ripa*, 2026 WL 2253670, at *3 (S.D. Fla. Aug. 5, 2026) (Damian, J.) (relying on *Thuraissigiam*'s observation that aliens paroled "for years pending removal" should be treated "as if stopped at the border"); *Mesadieu v. U.S. Immigr. & Customs Enf't*, 2026 WL 2792854, at *1 (S.D. Fla. Sept. 10, 2026) (Kuntz, J.) (concluding that previously paroled arriving aliens remain subject to § 1225(b), under which "arriving aliens are not entitled to bond hearings and are subject to mandatory detention").

To be sure, an alien's classification as an arriving alien cannot, standing alone, satisfy *Hernandez Alvarez*'s separate requirement that he be "seeking admission." 175 F.4th at 1268–69. But Alcon *actually sought* admission at the border, and Congress expressly provided that, following parole, he must return to "the custody from which he was paroled" while "his case shall continue." 8 U.S.C. § 1182(d)(5)(A). We cannot reconcile this directive with a rule that allows arriving aliens to evade mandatory detention by "simply overstaying their parole period." *Mesadieu*, 2026 WL 2792854, at *2. Temporary parole cannot become a mechanism for escaping the very custody to which § 1182(d)(5)(A) expressly requires an alien to return.

Because Alcon satisfies *Hernandez Alvarez*'s three requirements—and since his detention remains governed by the provisions of § 1225(b)(2)—he isn't entitled to a bond hearing under

§ 1226(a). *See* 8 C.F.R. § 1003.19(h)(2)(i)(B) (excluding "[a]rriving aliens in removal proceedings, including aliens paroled after arrival," from IJ bond redeterminations). We therefore **DENY** his statutory challenge.

**II. Due Process**

Alcon also advances due-process challenges under the same theory. *See* Petition at 13 ("Respondents re-detained Petitioner without any notice, without stating any reason, without finding that he poses a danger or flight risk, and without any changes in circumstances, and no neutral decision-maker will ever review that decision."); *id.* at 14 ("Petitioner's detention also violates substantive due process because it is not reasonably related to any legitimate governmental purpose. Petitioner presents no danger to the community and no risk of flight; the Government already made that determination when it paroled him, and nothing has changed except an uncharged traffic stop."). But the Supreme Court has held that the government needn't conduct individualized bond hearings to determine an alien's flight risk and may detain aliens in removal proceedings to combat the risk of widespread flight. *See Demore v. Kim*, 538 U.S. 510, 528 (2003) (upholding § 1226(c)'s mandatory-detention scheme against a challenge asserting that alien detainees had a due-process right to individualized bond hearings). We therefore **DENY** Alcon's due-process challenges.

* * *

After careful review, therefore, we **ORDER and ADJUDGE** that the Petition [ECF No. 1] is **DISMISSED**. We direct the Clerk of Court to **CLOSE** this case and **TERMINATE** any pending motions and deadlines.

**DONE AND ORDERED** in the Southern District of Florida on November 13, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of record